UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CXENSE, INC., | ) | Case No.    16-30118 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERALDO STEIN MARONIENE, | ) | |
| NVG PARTICIPAÇÕES S.A. d/b/a NAVEGG | ) | |
| and DENTSU AEGIS NETWORK LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff CXENSE, INC. (the "Company"), by its Counsel, The Law Office of Elizabeth J. Quigley and Vaneria & Spanos, Of Counsel, complaining of defendants GERALDO STEIN MARONIENE (sometimes referred to hereafter as "Mr. Maroniene"), NVG PARTICIPAÇÕES S.A. d/b/a NAVEGG (sometimes referred to hereafter as "Navegg") and DENTSU AEGIS NETWORK LTD. (sometimes referred to hereafter as "Dentsu Aegis") herein, brings this action for injunctive relief and for monetary and punitive damages and alleges the following:

## STATEMENT OF THE CASE

1.   This action arises out of Mr. Maroniene's breach of his contractual, statutory and common law obligations to the Company: (i) accepting employment with Navegg, a direct competitor of the Company, and competing with the Company, (ii) solicitation of the Company's customers and prospective customers, and (iii) disclosure

of the Company's Trade Secrets and Confidential Information[1]; and this action is taken on account of Navegg's and Dentsu Aegis' tortious interference with contract, intentional tort, and breach of statutory and common law obligations to the Company.  Defendants have colluded to engage in, inter alia, unfair competition with the Company and to misappropriate the Company's customers and prospective customers and Trade Secrets and Confidential Information as explained in detail below.

2.     The Company is in the business of software development and is a global leader in data management platform, online content management, real-time analytics and advertising, media, search and personalization technology.

3.     Mr. Maroniene is a former employee of the Company having served as its General Manager for Latin America and Head of Corporate Development.  His employment with the Company began in July of 2011 and terminated in January of 2016.  Upon information and belief, in or about March 2016 Mr. Maroniene commenced employment at Navegg, a direct competitor of the Company which purports to be a leader in big data, data management platform (DMP), analytics solutions and programmatic media strategies, as Head of International Growth -- a position substantially similar to his role

---

1. As such terms are defined in a certain Employment Agreement dated as of 11 July 2011.

as the Company's Head of Corporate Development.

4.    Since joining Navegg, Mr. Maroniene has contacted the
Company's customers and prospective customers in an effort to solicit
orders and steal business opportunities away from the Company for
his own personal benefit and for the benefit of Navegg and Dentsu
Aegis and has misappropriated and utilized the Company's Trade
Secrets and Confidential Information for competitive gain and to the
detriment of the Company.

5.    Mr. Maroniene has an employment agreement with the
Company wherein it was expressly agreed that he (i) would not compete
with the Company for a period of twelve (12) months after his
employment with the Company terminated, (ii) would not solicit
business from the Company's customers or prospective customers for
a period of twenty-four (24) months after his employment with the
Company terminated, and (iii) would protect the confidentiality of,
and not disclose, the Company's Trade Secrets and Confidential
Information.

6.    In disregard of his contractual obligations to the
Company, Mr. Maroniene has: (a) accepted an offer of, and
has taken on, employment with Navegg, a direct competitor of the
Company in the fields of data management platform, analytics
solutions and programmatic media strategies; (b) contacted many of
the Company's customers and prospective customers in an effort to

3

solicit their business; and (c) misappropriated the Company's Trade Secrets and Confidential Information while disclosing same to Navegg and Dentsu Aegis. These acts constitute material breaches of the Employment Agreement dated 11 July 2011 (the "Employment Agreement") that Mr. Maroniene entered as a centerpiece of his employment with the Company.

7. Navegg and Dentsu Aegis, with knowledge of Mr. Maroniene's prior positions with and obligations to the Company, have recruited, hired, enticed, enabled and encouraged Mr. Maroniene to compete with the Company, to pirate away the Company's customers and prospective customers, and to misappropriate and disclose the Company's Trade Secrets and Confidential Information.

8. Therefore, the Company brings this action for damages and injunctive relief against Mr. Maroniene, Navegg and Dentsu (collectively referred to as "Defendants") in order to safeguard and protect its business, customer contacts, Trade Secrets and Confidential Information from Defendants' wrongful actions, for damages for harm that has occurred and which continues and, in the case of Navegg and Dentsu Aegis, for punitive damages.

## PARTIES

9. The Company is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts with its registered office located in Stockbridge, Massachusetts; the

4

Company also has an office in Boston, Massachusetts. The Company is in the software business and the development of data management platform, online content management, real-time analytics and advertising, media, search and personalization technology; the Company's software and technology is used by leading media, e-commerce and consumer brands. The Company's technology powers more than six thousand (6,000) websites worldwide and maintains approximately one (1) billion user profiles on behalf of its customers.

10. Upon information and belief, Mr. Maroniene is an individual residing at 1230 Peregrine Way, Weston, Fla. 33327. Mr. Maroniene was employed by the Company from 11 July 2011 until 27 January 2016 having served as its General Manager for Latin America and Head of Corporate Development. Upon further information and belief, Mr. Maroniene currently serves as Navegg's Head of International Growth and is based in Miami, Fla.

11. Upon information and belief, defendant NVG PARTICIPAÇÕES S.A. is a Brazilian corporation with a place of business located at Travessa João Turin, 37 - Água Verde, Curitiba - PR 80240-100, Brazil, which conducts its worldwide business operations under the name NAVEGG. Navegg is a wholly-owned and controlled subsidiary of Dentsu Aegis, maintains a place of business in the State of Florida and transacts business within, and markets its products throughout,

the Commonwealth of Massachusetts.

12.   Upon information and belief, defendant DENTSU AEGIS
NETWORK LTD. is a global multimedia company organized under the laws
of the United Kingdom with operational offices located at 150 East
42nd Street, New York City 10017; Dentsu Aegis is a wholly-owned and
controlled subsidiary of Dentsu, Inc. of Tokyo, Japan; upon further
information and belief, Dentsu Aegis transacts business within the
Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

13.   This Court has subject matter jurisdiction in this
action pursuant to 28 U.S.C. § 1332 because of diversity of
citizenship of the Parties and the amount in controversy exceeds the
sum of Seventy-Five Thousand Dollars ($75,000), exclusive of
interest and costs.

14.   Pursuant to Section 9 of the Employment Agreement, Mr.
Maroniene has submitted himself to the personal jurisdiction of this
Court.   Moreover, the Employment Agreement at issue is governed by
Massachusetts law.

15.   This Court also has personal jurisdiction over Mr.
Maroniene pursuant to Mass. G.L. c. 223A § 3(a) because he regularly
transacted business in Massachusetts by virtue of his employment with
the Company, a Massachusetts corporation.   As an employee of the
Company, Mr. Maroniene relied on administrative services, support,

6

management and interactions with the Company's employees to carry
out his responsibilities; he reported to the Company's Executive Vice
President of Business Development located in Massachusetts and
routinely visited the Company's Massachusetts offices.   The
foregoing demonstrates continuous, systematic contact with
Massachusetts so that this Court may exercise general personal
jurisdiction over Mr. Maroniene.

        16.   This Court has personal jurisdiction over Navegg
pursuant to Mass. G.L. c. 223A § 3(a), (b) and (d) because Navegg
transacts business in Massachusetts by marketing and selling its
products within Massachusetts, derives revenues from Massachusetts
customers, and committed tortious conduct in Massachusetts.

        17.   This Court has personal jurisdiction over Dentsu Aegis
pursuant to Mass. G.L. c. 223A § 3(a), (b) and (d) because Dentsu
Aegis transacts business in Massachusetts, engages professionals in
Massachusetts, derives revenues from Massachusetts customers,   and
committed tortious conduct in Massachusetts.

        18.   Venue is proper in this action under 28 U.S.C. §
1391(a) and (b) because this Court has personal jurisdiction over
Navegg and Dentsu Aegis, the Employment Agreement at issue contains
a Massachusetts choice of law provision and the subject matter of
this action concerns the terms and conditions of Mr. Maroniene's
employment relationship with the Company, a corporation duly

                                    7

organized and existing under the laws of the Commonwealth of
Massachusetts.

FACTUAL ALLEGATIONS

19.  As stated above, the Company is a global leader in data
management platform, online content management, real-time analytics
and advertising, media, search and personalization technology; its
software and technology are used by some of the world's leading media,
e-commerce and consumer brands.

20.  The Company's business is built on cultivating customer
loyalty and repeat business, which is critical to its success in a
competitive business environment.  One of the Company's main
business challenges is to develop, maintain and increase its customer
base while safeguarding its Trade Secrets and Confidential
Information.  The Company aims to foster secure, long-lasting
customer relationships by encouraging its employees to develop
relationships with existing and prospective customers.

21.  The Company's employees provide direct services to its
customers in an effort to develop and maintain continuous sales and
marketing relationships with customers -- particularly online
publishers, media companies and e-commerce portals.

22.  On or about 11 July 2011 Mr. Maroniene entered into the
Employment Agreement, in consideration for which the Company hired
Mr. Maroniene, provided him with substantial compensation and fringe

benefits, and afforded him access to the Company's Trade Secrets and Confidential Information.

23. During the course of his employment with the Company, Mr. Maroniene was responsible for managing the Company's rapidly growing business in Latin America and corporate development. Because of his Brazilian background and fluency in Portuguese, the Company believed that Mr. Maroniene would be valuable in expanding the Company's presence and customer base in the Latin America market, particularly in Brazil. As Head of Corporate Development he also focused on mergers and acquisitions.

24. Mr. Maroniene closely interacted with the Company's customers and prospective customers, establishing customer goodwill. He also participated in management meetings at which the Company's Trade Secrets and Confidential Information were developed and discussed. As a result of his positions as the Company's General Manager of Latin America and Head of Corporate Development, Mr. Maroniene developed a significant number of contacts and relationships with the Company's customers and prospective customers, had access to the Company's customer lists and was privy to the Company's Trade Secrets and Confidential Information.

25. The Company's Trade Secrets and Confidential Information, customer lists, customer goodwill and business reputation are critical to its business. Accordingly, in order to

9

protect these assets, employees are required to execute employment agreements which contain restrictive covenants that prohibit them from disclosing or using the Company's Trade Secrets and Confidential Information, from working for direct or indirect competitors of the Company and from soliciting business from the Company's customers and prospective customers.

26.    The Employment Agreement provides that Mr. Marioniene shall hold in confidence at all times all of the Company's Trade Secrets and Confidential Information and he shall not disclose or use such Trade Secrets and Confidential Information without the prior written consent of the Company.

27.    The Employment Agreement prohibits Mr. Maroniene from seeking or accepting employment (including a consulting position) with any competitor of the Company for a period of one (1) year from the date his employment is terminated (hereinafter referred to as the "Non-Compete Period").   However, in the event that Mr. Maroniene is offered a position with or is about to become employed by a competitor of the Company during the Non-Compete Period, he is obligated to immediately notify the Company in writing[2], at which time the Company may exercise this restrictive covenant.

28.    The Employment Agreement also prohibits Mr. Maroniene from soliciting or accepting any business from any client or customer

---

2. This obligation survives for a period of twelve (12) months from the date of the termination of Mr. Maroniene's employment.

10

of the Company (including prospective clients and customers with whom he had contact with during his employment at the Company) for the purposes of providing products and services that are competitive with those provided by the Company for a period of twenty-four (24) months from the date his employment with the Company is terminated (hereinafter referred to as the "Non-Solicitation Period").

29.    In connection with his employment with and duties at the Company, Mr. Maroniene acquired confidential and proprietary information regarding, amongst other things, the Company's customers, prospective customers and individual customer contacts, business and marketing plans and strategies, financial statements and projections, proposed services and products, scientific and technical information, and design processes.  The Company maintained this information in the strictest of confidence by communicating to its employees that the information should be kept confidential and should not be disclosed to any parties outside of the Company.

30.    Mr. Maroniene had substantial access to, and frequently used, the Company's Trade Secrets and Confidential Information.   He had frequent interactions with the Company's customers and prospective customers and participated in management meetings at which confidential sales, marketing, technological and financial information was discussed.   Among the information to which Mr. Maroniene had access were the Company's customer lists, which

11

included names, addresses and phone numbers for each of the Company's customers and prospective customers, along with proprietary information.   Such information on the Company's sales, marketing, technological and financial information is highly confidential and may not be disclosed to any parties outside of the Company.

31.   Mr. Maroniene's employment with the Company terminated on 27 January 2016, whereupon he was offered, and accepted, the Company's standard severance package of two (2) months' salary in exchange for a General Release.   He also was asked to return the Company's files and property which were in his possession, including a laptop computer; however, he has failed to do so.   This laptop computer is connected to the Company's computer network and contains Company Trade Secrets and Confidential Information, and information Mr. Maroniene generated on the Company's behalf during the course of his employment.

32.   Mr. Maroniene never notified the Company that he was offered a position or that he had accepted employment with Navegg, as he was required to do under the Employment Agreement.

33.   On or about 8 April 2016 the Company learned that Mr. Maroniene had accepted employment with Navegg and that he and Navegg were contacting the Company's customers and prospective customers to solicit orders.

34.   After learning of Mr. Maroniene's conduct, on or about

12

12 April 2016 the Company informed Mr. Maroniene that (i) the Company had learned of his employment with Navegg, a direct competitor of the Company, (ii) the Company had been notified by several contacts and customers that he and Navegg had approached them in an attempt to solicit business and (iii) he had been disclosing Trade Secrets and Confidential Information to Navegg and Dentsu Aegis for competitive gain.

35.   Navegg is a direct competitor of the Company which offers and performs many of the same services the Company.   For example, Navegg's website (www.navegg.com) claims that it is "Latin America's leader in big data, data management platform (DMP), analytics solutions and programmatic media strategies".   Navegg, therefore, openly operates a fully-functioning competing business in relation to the Company.

36.   On or about 25 April 2016 the Company received an email from Mr. Maroniene wherein he admitted to accepting employment with Navegg, contended that he had "mobilized the entire legal apparatus of [Dentsu Aegis] as well as [his] own attorneys" and claimed as follows,

Even though I do not consider Navegg a competitor [of the Company], many customers will perceive the 2 solutions similar ... Navegg is a simple DMP [data management platform], and a very good data provider.   I do not see

13

any reason why we could not partner in the future in deals across the globe. However, that has to be a mutually benefitting relationship for both companies and we will always promote Navegg in a competitive situation (should it occur).

37. After Mr. Maroniene confirmed his work for Navegg, the Company notified him of its intent to exercise all of its rights under the Employment Agreement, including enforcement of the non-compete and non-solicitation provisions.

## COUNT I
### BREACH OF CONTRACT

38. Paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

39. As outlined above, Mr. Maroniene executed a binding and enforceable Employment Agreement with the Company supported by consideration which by its terms is governed by the laws of the Commonwealth of Massachusetts.

40. By engaging in the conduct described above, Mr. Maroniene breached the Employment Agreement in several material respects, including, but not limited to, his (i) acceptance of employment with Navegg during the Non-Compete Period without first obtaining the Company's prior written consent; (ii) failure to immediately notify the Company that he was offered, or that he had accepted, employment with Navegg; (iii) solicitation and acceptance

14

of business from customers and prospective customers of the Company
during the Non-Solicitation Period; and (iv) disclosure of the
Company's Trade Secrets and Confidential Information to Navegg and
Dentsu Aegis while using such information for competitive gain.

41. As a direct and proximate result of Mr. Maroniene's
breach of his contractual obligations, the Company has suffered and
will continue to suffer irreparable harm and substantial monetary
damages in an amount to be proven at trial, but believed to be not
less than Twenty-Five Million Dollars ($25,000,000), plus interest.

## COUNT II
## BREACH OF FIDUCIARY DUTY

42. Paragraphs 1 through 41 are incorporated by reference
as if fully set forth herein.

43. Mr. Maroniene worked for the Company in a managerial
capacity as General Manager for Latin America and Head of Corporate
Development; as such he owed the Company a duty of loyalty and utmost
good faith and fair dealing.

44. As General Manager for Latin America and Head of
Corporate Development, Mr. Maroniene was granted substantial access
to the Company's Trade Secrets and Confidential Information,
occupied a position of trust and confidence at the Company, and was
obligated to protect the Company's interests. Therefore, he owed
a fiduciary duty, including the duty of loyalty, to the Company.

45. Mr. Maroniene has breached his fiduciary duty to the

Company by acting in a manner that has conflicted with, and undermined, the Company's business interests.

46. Mr. Maroniene has breached his fiduciary duty to the Company by disclosing the Company's Trade Secrets and Confidential Information to Navegg and Dentsu Aegis and using such information for the purpose of advancing the business interests of Navegg, a direct competitor of the Company, and Dentsu Aegis.

47. Mr. Maroniene has breached his fiduciary duty to the Company by soliciting and accepting business from customers and prospective customers of the Company during the Non-Solicitation Period for defendants' collective benefit. In doing so, Mr. Maroniene has harmed the Company's interests and the Company has suffered and will continue to suffer damages as a result.

48. As a direct and proximate result of Mr. Maroniene's breach of his fiduciary duty to the Company, the Company has suffered and will continue to suffer irreparable harm and substantial monetary damages in an amount to be proven at trial, but believed to be not less than Twenty-Five Million Dollars ($25,000,000), plus interest.

## COUNT III
## BREACH OF GOOD FAITH AND FAIR DEALING

49. Paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

50. Every contract implies good faith and fair dealing between the parties to it.

16

51. The implied covenant of good faith and fair dealing ensures that no party will do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

52. By willfully committing the aforesaid acts, omissions and misrepresentations, Mr. Maroniene breached the implied covenant of good faith and fair dealing that is implied as a matter of law in his Employment Agreement with the Company.

53. As a result of Mr. Maroniene's breach of the implied covenant of good faith and fair dealing, Company has been damaged in an amount to be proven at trial.

COUNT IV
MISAPPROPRIATION OF CONFIDENTIAL
INFORMATION IN VIOLATION OF MASSACHUSETTS
COMMON LAW AND MASSACHUSETTS G.L.c.93, § 42

54. Paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

55. As more fully described above, Mr. Maroniene acquired Trade Secrets and Confidential Information while working for the Company.

56. The Company has taken reasonable steps to safeguard the secrecy of its Trade Secrets and Confidential Information. Therefore, the Company's Trade Secrets and Confidential Information are not known outside of the Company.

57. The Company has expended significant financial and

17

other resources in developing its Trade Secrets and Confidential Information, all of which are valuable to the Company.

58.   Mr. Maroniene knew that the use or disclosure of the Company's Trade Secrets and Confidential Information for any purpose other than for the benefit of the Company was prohibited.

59.   Mr. Maroniene used and disclosed, continues to use and disclose, or inevitably will use and disclose, the Company's Trade Secrets and Confidential Information for his own benefit and that of the corporate defendants Navegg and Dentsu Aegis and their affiliates within the Dentsu empire.

60.   As a result of Mr. Maroniene's misappropriation of the Company's Trade Secrets and Confidential Information, the Company has suffered and will continue to suffer irreparable harm and substantial monetary damages in an amount to be proven at trial, but believed to be not less than Twenty-Five Million Dollars ($25,000,000), plus interest.

## COUNT V
## TORTIOUS INTERFERENCE WITH
## CONTRACTUAL AND BUSINESS RELATIONS

61.   Paragraphs 1 through 60 are incorporated by reference as if fully set forth herein.

62.   Mr. Maroniene has a binding and enforceable Employment Agreement that contains non-compete, non-solicitation and non-disclosure provisions which survived the termination of his employment with the Company.

18

63. Navegg and Dentsu Aegis with knowledge of Mr. Maroniene's duties with and obligations to the Company have recruited, hired, enticed, enabled and encouraged Mr. Maroniene to compete with the Company, to solicit business from and steal away the Company's customers and prospective customers, thereby destroying its business relationships, and to disclose the Company's Trade Secrets and Confidential Information.

64. Defendants have and intend to continue to knowingly, maliciously and in bad faith, interfere with the Company business and contractual relationships with its customers and prospective customers.

65. As a direct and proximate result of defendants' misconduct, the Company has suffered and will continue to suffer irreparable harm and substantial monetary damages in an amount to be proven at trial, but believed to be not less than Twenty-Five Million Dollars ($25,000,000), plus interest.

## COUNT VI
## VIOLATION OF THE COMPUTER
## FRAUD ABUSE ACT (18 U.S.C. §§ 1030 ET SEQ.)

66. Paragraphs 1 through 65 are incorporated by reference as if fully set forth herein.

67. The data network on which the Company maintained and currently maintains its Trade Secrets and Confidential Information in electronic form is a secure network of computers used in interstate commerce.

19

68.   During his employment with the Company, Mr. Maroniene
was authorized by the Company to use its computers, and to access
its network, for the sole purpose of performing work on behalf of
the Company.   Once Mr. Maroniene's employment with the Company
terminated, Mr. Maroniene had no right to utilize the Company's
computers and computer network or to access the Company's Trade
Secrets and Confidential Information.

69.   As part of his employment with the Company, Mr.
Maroniene was provided with the Company's files and property,
including a laptop computer.   This laptop computer contains the
Company's Trade Secrets and Confidential Information along with
other valuable information Mr. Maroniene generated on the Company's
behalf during his employment.   This secure laptop computer also has
been connected to the Company's computer network.

70.   Once Mr. Maroniene's employment terminated, he was
asked to return the Company's laptop computer; however, Mr. Maroniene
has failed to do so.

71.   Mr. Maroniene has improperly retained the Company's
laptop computer with access to some or all of the contents of the
Company's secure data network and Trade Secrets and Confidential
Information with the intent to defraud the Company.

72.   Mr. Maroniene has engaged in the conduct described
above for his own personal benefit, and for that of Navegg and Dentsu
Aegis.

20

73.  Mr. Maroniene violated the Computer Fraud and Abuse
Act, 18 U.S.C. §§ 1030 et seq., by his conduct described above.
136.

74.  As a direct and proximate result of Mr. Maroniene's
misconduct, the Company has suffered and will continue to suffer
irreparable harm and substantial monetary damages in an amount to
be proven at trial, but believed to be not less than Twenty-Five
Million Dollars ($25,000,000), plus interest.

## COUNT VII
## CONVERSION OF THE COMPANY'S PROPERTY

75.  Paragraphs 1 through 74 are incorporated by reference
as if fully set forth herein.

76.  Through his wrongful conduct, Mr. Maroniene has refused
to return, improperly retained, and assumed and exercised ownership
rights over the Company's property, including, without limitation,
the Company's laptop computer and Trade Secrets and Confidential
Information stored and accessed thereon.

77.  Mr. Maroniene's unauthorized exercise and assumption of
ownership rights over the Company's property constitutes theft and
conversion of the Company's property.

78.  As a direct and proximate result of Mr. Maroniene's
misconduct, the Company has suffered irreparable harm, including
actual loss.

21

COUNT VIII
TORTIOUS INTERFERENCE WITH CONTRACT
AGAINST NAVEGG AND DENTSU AEGIS

79.  Paragraphs 1 through 78 are incorporated by reference
as if fully set forth herein.

80.  Mr. Maroniene has a binding and enforceable Employment
Agreement that contains non-compete, non-solicitation and
non-disclosure provisions which survive the termination of his
employment with the Company.

81.  Despite having actual knowledge of the terms of Mr.
Maroniene's post-employment restrictions under the Employment
Agreement, Navegg and Dentsu Aegis have intentionally and improperly
interfered with Mr. Maroniene's performance of the Employment
Agreement by recruiting and employing him and by encouraging,
enabling, endorsing and ratifying his breach of the Employment
Agreement in many respects, including the disclosure of the Company's
Trade Secrets and Confidential Information.

82.  As a direct and proximate result of Navegg's and Dentsu
Aegis' wrongful conduct amounting to corporate piracy, the Company
has suffered and will continue to suffer irreparable harm and
substantial monetary damages in an amount to be proven at trial, but
believed to be not less than Twenty-Five Million Dollars
($25,000,000), plus interest.

22

COUNT IX
VIOLATION OF G.L.c. 93A, § 11
UNFAIR AND DECEPTIVE TRADE PRACTICES

83. Paragraphs 1 through 82 are incorporated by reference as if fully set forth herein.

84. Navegg and Dentsu Aegis have engaged in unfair and deceptive trade practices by endeavoring to obtain and use the Company's Trade Secrets and Confidential Information, despite its actual knowledge that (i) such information was wrongfully obtained, and (ii) Mr. Maroniene has violated his post-employment obligations to the Company.

85. Navegg and Dentsu Aegis have engaged in unfair and deceptive trade practices intentionally, knowingly, and willfully seeking to acquire and misuse the Company's Trade Secrets and Confidential Information, and to solicit the Company's current, former, and prospective customers despite actual knowledge that Mr. Maroniene could not work for Navegg without breaching his post-employment contractual obligations to the Company.

86. As a direct and proximate result of Navegg's and Dentsu Aegis' unfair and deceptive conduct, the Company has suffered and will continue to suffer irreparable harm and substantial monetary damages in an amount to be proven at trial, but believed to be not less than Twenty-Five Million Dollars ($25,000,000), plus interest.

23

## COUNT X
### CIVIL CONSPIRACY

87.   Paragraphs 1 through 86 are incorporated by reference as if fully set forth herein.

88.   Mr. Maroniene entered into the employ of Navegg, a subsidiary of Dentsu Aegis.

89.   Navegg and Dentsu Aegis are competitors of the Company and are aware that Mr. Maroniene is in breach of his Employment Agreement.

90.   Navegg and Dentsu Aegis knew the solutions, customer base, and Trade Secrets and Confidential Information being offered by Mr. Maroniene were the exclusive products of the Company.

91.   Navegg and Dentsu Aegis offered substantial assistance and encouragement to Mr. Maroniene to continue to pursue their interests under a common scheme to gain a competitive advantage over the Company by offering to shield him from potential liability through legal assistance and a job placement in a country with no meaningful labor laws.

92.   As a result of the aforesaid conspiracy, the Company has been damaged in an amount to be proven at trial.

## COUNT XI
### INJUNCTIVE RELIEF

93.   Paragraphs 1 through 92 are incorporated by reference as if fully set forth herein.

94.   In direct violation of the non-compete, non-

24

solicitation and confidentiality prohibitions in the Employment
Agreement, Mr. Maroniene (i) accepted employment with Navegg, a
direct competitor of the Company, during the Non-Compete Period
without first notifying the Company that he was offered or that he
accepted employment with Navegg and without obtaining the Company's
prior written consent; (ii) solicited and accepted business from
customers and prospective customers of the Company during the
Non-Solicitation Period; and (iii) disclosed the Company's Trade
Secrets and Confidential Information to Navegg and Dentsu Aegis for
competitive gain.

95. Given the level of competition in the data management
field and the sales and revenue at stake, the wrongful actions of
Mr. Maroniene, Navegg and Dentsu Aegis have caused and will continue
to cause irreparable harm to the Company which may not be adequately
remedied by an award of monetary damages. The Company will continue
to suffer such injury unless Mr. Maroniene, Navegg and Dentsu Aegis
are restrained and enjoined from continuing the wrongful conduct and
from breaching or interfering with the Employment Agreement.

96. Under the Employment Agreement, the Company is entitled
to seek injunctive relief from this Court enforcing the
restrictive covenants in the Employment Agreement. The Company is
entitled to an injunction preventing Mr. Maroniene from continuing
employment with Navegg (a direct competitor), soliciting the

25

Company's customers and prospective customers, and

disclosing to others the Company's Trade Secrets and Confidential

Information.

97.   The Company is entitled to an injunction against

preventing Navegg and Dentsu Aegis from interfering with Mr.

Maroniene's performance of the Employment Agreement by continuing

to employ him and endorsing and ratifying his breach of the Employment

Agreement and interference with the Company's contracts with its

customers.

98.   The Company is entitled to an injunction preventing

Defendants from accessing, using, distributing or disseminating the

Company's Trade Secrets and Confidential Information and all other

physical or intellectual property of any sort.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.   Permanently enjoin Mr. Maroniene from any continued

employment with, work for or consultation with Navegg, from any

further solicitation of the Company's customers and prospective

customers, and from using, disclosing or disseminating any of the

Company's Trade Secrets and Confidential Information;

2.   Order that plaintiff's claims against Mr. Maroniene for

monetary damages be referred to binding arbitration under the

jurisdiction of this Court within the Commonwealth of Massachusetts

pursuant to terms of the Employment Agreement;

3.   Permanently enjoin Mr. Maroniene, Navegg and Dentsu from disclosing, disseminating, using, or providing to any third-party any of the Company's Trade Secrets and Confidential Information;

4.   Order that Mr. Maroniene, Navegg and Dentsu Aegis immediately return to the Company all originals and all copies, electronic or otherwise, of all of the Company's physical and intellectual property in their possession or under their custody, or control, including, but not limited to, the Company's Trade Secrets and Confidential Information, the Company's laptop computer and lists of the Company's customers and prospective customers;

5.   Permanently enjoin Mr. Maroniene, Navegg and Dentsu Aegis from interfering with the Company's relationships with its customers and prospective customers as to whom Mr. Maroniene had knowledge or obtained confidential information during his employment with the Company;

6.   Enter judgment in the Company's favor on each cause of action set forth above;

7.   Award to the Company monetary damages in an amount to be proven at trial, for the economic injury it has sustained as a consequence of Mr. Maroniene's, Navegg's and Dentsu Aegis' wrongful actions; and

8.   Award to the Company and against Navegg and Dentsu

27

Aegis punitive damages and attorneys' fees in an amount to be determined at trial which would discourage and deter said defendants from any such further wrongful actions.

JURY REQUEST

The Company requests a jury trial on all monetary claims so triable, except as to those referred to arbitration.

Dated:  As of 28 June 2016
        Pittsfield, Massachusetts

THE LAW OFFICES OF
ELIZABETH J. QUIGLEY

By: _____
    Elizabeth J. Quigley, Esq.
    27 Henry Avenue
    Pittsfield, Massachusetts 01201
    413.499.5476
    Kel.quigley@verizon.net

    VANERIA & SPANOS
    9 East 45th Street – 5th Floor
    New York City 10017
    212.753.1800

    Attorneys for Plaintiff CXENSE, INC.